14-4734

## UNITED STATES COURT OF APPEALS

## FOURTH CIRCUIT

### UNITED STATES OF AMERICA,
*Appellee*

v.

### REGINALD LASHAWN LOCKHART,
*Appellant*

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA,
## CHARLOTTE DIVISION,
## THE HONORABLE ROBERT J. CONRAD, JR., PRESIDING

## BRIEF FOR THE APPELLANT

Aaron E. Michel
Attorney at Law
3736 Surry Ridge Court
Charlotte, NC 28210-6921
704-451-8351

Counsel for the Appellant

14-4734

## UNITED STATES COURT OF APPEALS

## FOURTH CIRCUIT

### UNITED STATES OF AMERICA,
*Appellee*

**v.**

### REGINALD LASHAWN LOCKHART,
*Appellant*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA,
CHARLOTTE DIVISION,
THE HONORABLE ROBERT J. CONRAD, JR., PRESIDING**

**BRIEF FOR THE APPELLANT**

**Aaron E. Michel
Attorney at Law
3736 Surry Ridge Court
Charlotte, NC 28210-6921
704-451-8351**

**Counsel for the Appellant**

# TABLE OF CONTENTS

**Page**

**Statement of Jurisdiction** ...................................................................**1**
**Statement of Issues**...........................................................................**1**
**Statement of the Case** ........................................................ **1**
**Statement of the Facts** ...................................................... **2**
**Summary of Argument**.............................................................**3**
**Argument - The ACCA is unconstitutional** ...........................**4**
**Conclusion** .........................................................................**12**
**Request for Oral Argument** ................................................**12**
**Certificate of Compliance** .................................................**12**
**Certificate of Service** .......................................................**13**
**Signature**.............................................................................**13**

# TABLE OF AUTHORITIES

Page

## CASES

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ................................... 11
*Gavett v. Alexander*, 477 F.Supp. 1035 (D.D.C. 1979) .................................5
*INS v. Chadha*, 462 U.S. 919 (1983) ............................................................4
*State v. Baysden*, 718 S.E.2d 699 (N.C.App. 2011) ................................... 10
*State v. Britt*, 681 S.E.2d 320 (N.C. 2009) ............................................ 10-11
*United States v. Deleveaux*, 205 F.3d 1292 (11th Cir. 2000) .................. 11-12
*United States v. Lovett*, 328 U.S. 303 (1946) ..............................................4
*United States v. Thompson,* 421 F.3d 278 (4th Cir. 2005) ............................4

## STATUTES

18:922 ................................................................................. passim
18:924 ................................................................................. passim
18:3553 ..........................................................................................1
18:3559 ..........................................................................................7
18:3742 ..........................................................................................1
28:1291 ..........................................................................................1
N.C.G.S. 13-1.................................................................................9
N.C.G.S. 14-7.1..............................................................................7
N.C.G.S. 14-7.7..............................................................................7
N.C.G.S. 14-7.35 ...........................................................................8
N.C.G.S. 20-138.5 .........................................................................8

## RULES

U.S.S.G. 4A1.1 ...............................................................................7
U.S.S.G. 4B1.1................................................................................8
U.S.S.G. 4B1.4................................................................................8

## CONSTITUTION

Amend II ............................................................................... passim
Amend V ............................................................................... passim

**TREATISES**

Note, The Armed Career Criminal Act and the U.S. Sentencing Guidelines: Moving Toward Consistency, 46 Harv.J.Legis. 547 (2009) ...........................5

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742.

## STATEMENT OF ISSUES

I.     Whether the Armed Career Offender Act as applied in this case passes constitutional muster?

## STATEMENT OF THE CASE

On November 13, 2012, the Charlotte federal grand jury returned a one count indictment against Mr. Lockhart accusing him of being a felon in possession of a firearm. (J.A. 8).

On April 9, 2013, Mr. Lockhart appeared before Magistrate Cayer to enter a guilty plea to the charge. (J.A. 5, 20-23).

On September 3, 2014, Mr. Lockhart appeared before District Court Judge Conrad for sentencing. (J.A. 6, 36). Judge Conrad heard Mr. Lockhart's objection to the application of the Armed Career Criminal Act in this case. (J.A. 39-41). Judge Conrad applied the ACCA, (J.A. 42-3), and sentenced Mr. Lockhart to the mandatory minimum of fifteen years imprisonment. (J.A. 46-7).

On September 18, 2014, judgment was entered, (J.A. 6-7, 51), and Mr. Lockhart filed notice of appeal. (J.A. 7, 57).

1

## STATEMENT OF THE FACTS

On September 12, 2012, Mr. Lockhart consented to a search of his residence by the Charlotte Mecklenburg Police Department. (J.A. 61). They found a Smith and Wesson, M&P .40 caliber pistol, serial # MRM2443 in the top drawer of the nightstand of Mr. Lockhart's bedroom. Id.

Mr. Lockhart waived his right to remain silent and informed the officers that he had purchased the firearm for protection. (J.A. 61-2). He needed this protection to defend himself from gang members who knew him when he was in prison and from dangerous people who lived in his rough neighborhood. (J.A. 62).

His prior convictions relate to the following events during a three month period when he was a minor. On December 5, 2000, at the age of 16, Mr. Lockhart robbed McDonalds and Jamall Glenn. (J.A. 65). On December 10, 2000, Mr. Lockhart robbed the Western Steer. (J.A. 65-6). On December 14, 2000, Mr. Lockhart robbed an ABC Store. (J.A. 65). On March 5, 2001, Mr. Lockhart robbed and assaulted Randy Cabrera and Andres Cabrera. (J.A. 65).

On March 9, 2001, Mr. Lockhart was arrested for the above-described robberies and assaults and entered a guilty plea on February 26, 2002. (J.A.

2

63). He was sentenced to an active punishment consisting of a minimum of 60 and maximum of 81 months for the robberies and a consecutive active punishment of a minimum 58 months and maximum 79 months for the assaults. (J.A. 63-4).

On March 25, 2011, Mr. Lockhart was paroled and on December 22, 2011, discharged, with restoration under North Carolina law of some civil rights but not the right to bear arms. (J.A. 64). It was approximately nine months later that he committed the instant offense of being a felon in possession of a firearm.

With regard to the instant offense, without the ACCA enhancement, Mr. Lockhart faced a statutory maximum of ten years and a guideline range of between 37 and 46 months imprisonment. (J.A. 74). Thus, the three month crime spree by Mr. Lockhart when he was 16 receives much more weight than the underlying crime of being a felon in possession of a firearm kept in his home in his bedroom for his protection. The tail is wagging the dog.

## SUMMARY OF ARGUMENT

The firearm was found in the nightstand next to Mr. Lockhart's bed in his home in a rough neighborhood and he possessed it for his protection

3

under these none-violent circumstances. The ACCA enhancement from the ten year maximum to a fifteen year minimum is inconsistent with the goal of incapacitation of a violent career offender under these circumstances. There is no element of recidivism as to the commission of violent crime after the completion of the sentence for the prior robberies and no basis for application of the enhancement.

**ARGUMENT**

**I.    The Armed Career Offender Act as applied in this case does not pass constitutional muster.**

A.    <u>Standard of Review</u>.

This Court reviews de novo appeals arguing that a sentence was unconstitutionally imposed as a matter of law. *United States v. Thompson*, 421 F.3d 278, 280-1 (4th Cir. 2005).

B.    <u>Discussion</u>.

It is customary for both the President and Executive Branch to continue enforcement of a federal statute unless and until the judicial branch renders a definitive verdict against the law's constitutionality. *INS* v. *Chadha*, 462 U.S. 919 (1983), and *United States* v. *Lovett*, 328 U.S. 303 (1946). Additionally, it has either challenged or declined to defend agency action in circumstances in which an Executive or independent agency

4

enforced or implemented a statute the Executive determined to be unconstitutional. *Gavett* v. *Alexander*, 477 F. Supp. 1035 (D.D.C. 1979)).

In *Gavett*, the court struck as unconstitutional, on due process and equal protection grounds, the federal statute's requirement that surplus military rifles could be sold at cost only to members of the National Rifle Association because a legitimate government objective was capable of achievement outside the framework created by Congress under the act in question. The same is true with the ACCA, a legitimate government objective is capable of achievement outside the framework create by Congress under the ACCA.

The legitimate government objective of the ACCA is to "incapacitate career criminals." Note, *The Armed Career Criminal Act and the U.S. Sentencing Guidelines: Moving Toward Consistency*, 46 Harv.J.Legis. 547 (2009). It was not to punish career criminals for possessing guns or to deter such possession." Id.

Congress started out with the results of studies of crime, saw that a few individuals commit most crimes, and wanted to incapacitate those individuals when their criminal behavior involved violence. Id. 545-6. It should be noted, however, that the studies also showed that like professional athletes, the career of the career offender does not last long and that these

career offenders "commit many fewer offenses after age thirty." Id. 546. As a result, rather than imposing mandatory life, the ACCA has a 15 year mandatory minimum. Id.

Having this goal to incapacitate career offenders but not wanting to supplant local and state jurisdiction in the area of criminal law, this concept was applied to a federal criminal law, that being a felon in possession crime. Id. The restraint of the federal government was moderate given that taxes were collected by the federal government from these communities and then given back to the local governments on condition that they prosecute career criminals under state criminal law. Id. 545. Thus the federal government controls, regardless of its competency to do so, this aspect of criminal law and relies upon both federal and state prosecutors to execute its wishes.

Incapacitation during the career of the criminal serves a legitimate goal. Incapacitation after that career has come to an end does not serve a legitimate goal. Incapacitating someone for their entire life when the career of violent crime drops off by age 30 offends individual liberty and wastes resources.

The ten year maximum for the felon in possession crime, 18 U.S.C. § 922(g), 924(a)(2), would cover this career of violent offending. A person who commits a string of robberies at age 16 and is subsequently found in

6

possession of a firearm only needs incapacitation for about ten years before he reaches the age when his career is over. Thus the existing regulatory scheme is sufficient to serve the legitimate goals of the ACCA.

The ACCA is overinclusive because it relies upon prior convictions not separated by an intervening arrest and for offenses that were either contained in the same charging instrument or resulted in sentences imposed on the same day. Note, id. at 555. Three offenses committed in rapid succession qualify under the ACCA as three separate offenses. Id. This one-strike-and-you're-out is inconsistent with the goal of incapacitating career offenders. Who ever heard of a system with only one time out before lowering the boom? What kind of parents would take that approach?

The traditional career offender scheme used by the states before the federal government got involved in the act and used by the federal government once it did thrust itself onto the stage of criminal law was to have time outs between each of the two or three prior convictions. This is true of the federal criminal history and career offender guidelines. U.S. Sentencing Guidelines Manual § 4A1.1. It is true of the federal three strikes law. 18 U.S.C. § 3559. It is how the North Carolina scheme is structured and implemented with the blessing and donations of the federal government. N.C.G.S. § 14-7.1 (habitual law); 14-7.7 (violent habitual law); 14-7.25

(habitual B&E law); 14-7.35 (armed habitual felon); 20-138.5 (habitual DWI).

Under the federal sentencing guidelines, we have the career offender rules that do not apply here because there is no intervening arrest between the multiple robberies. U.S.S.G. § 4B1.1. The guidelines for armed career criminals, under § 4B1.4, distinguishes between those violent career offenders who possessed the firearm during another violent crime, and those who simply possessed a gun. It is just a one point difference, which is a minor difference. Had Mr. Lockhart possessed the firearm during a robbery, the offense level is 34. Since his only crime was to possess the firearm, the offense level is 33. The drafters of the guidelines had to do this because of the mandatory minimum of fifteen years. That high minimum gives little room to distinguish between these two situations, even though they are two significantly different situations in terms of the seriousness of the crime. Again, the tail is wagging the dog.

The guidelines without the ACCA in this case were calculated by the probation office as a minimum of 37 and maximum of 46 months imprisonment. Mr. Lockhart was thirty when sentenced so the additional three to four years under the guidelines of incapacitation would have

8

sufficed under the studies that form the basis for the ACCA to usher Mr. Lockhart into his retirement from a career of violent offending.

Taking the example of the 16 year old that commits a string of robberies, is convicted, and then possesses a firearm, a guideline range of three to four years may not suffice to usher him into retirement. In that situation, an upward departure would solve the problem and the ten year maximum would provide the court adequate resources at taxpayer expense to incapacitate the defendant until retirement. It would certainly give the defendant a significant time out to reform.

One should do the time if he commits the crime and proportionality is an inherent part of this principle of fairness. The analogy to baseball, that its only fair that a criminal who gets three opportunities to reform before he is out, reflects this proportionality and the fairness of multiple opportunities to make a change. Under the ACCA and the judicial construction of the ACCA, Mr. Lockhart had only one opportunity, one time out to avoid a career of violent crime. This is unfair because the sentence dictated by the mandatory minimum is disproportionate to the crime of possession of a firearm.

Mr. Lockhart paid his debt to society. All his civil rights except for the right to bear arms were restored to him. N.C.G.S. § 13-1, et seq. He did

9

not possess the gun for the purpose of committing a violent crime. The gun was in his nightstand next to his bed for access if he needed to defend himself from an intruder. Under prior state law, the fundamental right to bear arms included the right of a felon upon discharge to have a firearm in his home or business for protection. *State v. Baysden*, 718 S.E.2d 699 (N.C. App. 2011); *State v. Britt*, 681S.E.2d 320 (N.C. 2009).

The place where the police found the firearm and the cooperation they received from Mr. Lockhart when they asked for permission to search his home, something he was under no obligation to do, suggests that Mr. Lockhart had a certain degree of respect not just for his own safety, but for the authority of the police to investigate crime, the sanctity of both his life and that of the officers who presented themselves at his home, and his willingness to sacrifice his right to be left alone in order to promote the welfare of the community.

He showed obedience and deference to the police, loyalty, patriotism, and self-sacrifice to the community, and respect for the sanctity of life in the reason for his possession of the firearm and in the cooperation with the officers. Application of the ACCA mandatory minimum does not meet constitutional muster and is disproportionate to the crime and the criminal. It

10

is not tailored to meet the goal of the ACCA, that is, to incapacitate those who would otherwise proceed to engage in a career of violent crime.

The individual has an "inherent right of self-defense" that is "central to the Second Amendment." *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). The home is "where the need for defense of self, family, and property is most acute." Id. The Second Amendment is a prohibition on irrational laws and limits the "scope for operation of the presumption of constitutionality." Id. n. 27.

At the time of Mr. Lockhart's robbery convictions state law provided for restoration of all rights of citizenship including the right to bear arms in home and business. *State v. Britt*, id. Even when there is no such restoration, the fundamental right to self-defense and its intimate connection to the preservation of innocent life allows the felon to raise an affirmative defense to possession of a firearm under extraordinary circumstances where (1) the person was under unlawful and present, imminent, and impending threat of death or serious bodily injury, (2) did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct, (3) had no reasonable legal alternative to violating the law, and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. *United States v. Deleveaux*, 205 F.3d

11

1292 (11th Cir. 2000). Mr. Lockhart had his firearm in his nightstand next to his bed in his home where the extraordinary circumstances that would provide a justification defense for using the firearm would apply, reflecting the sanctity of innocent life.

To treat this innocent life as a violent career offender under the ACCA for no other reason than after he paid his debt to society he had a firearm in his home for his protection degrades life itself and thereby offends the fundamental right of self-defense.

## CONCLUSION

For the foregoing reasons, this Court should vacate judgment and remand for further proceedings.

## REQUEST FOR ORAL ARGUMENT

The appellant requests that this Court consider oral arguments in this case because oral argument will significantly aid this Court in evaluating the merits of this appeal. Specifically, the errors were not the types that are easily or fully understood from a review of the transcript.

## CERTIFICATE OF COMPLAINCE

The undersigned certifies that:

12

1. This brief has been prepared using fourteen-point, proportionally spaced, serif typeface, using Word 2007.

2. Exclusive of the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, this certificate of compliance, and the certificate of service, the brief contains  2440 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the United States by mailing this day first class to Amy E. Ray, Assistant U.S. Attorney, 100 Otis Street, Room 233, Asheville, NC 28801.

This the 12th day of November, 2014.

/s Aaron E. Michel
Aaron E. Michel, bar no. 17177
Attorney for Appellant
3736 Surry Ridge Court
Charlotte, NC 28210-6921
704-451-8351
mail@aaronmichel.com
fax: 704-643-1004

13